UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ABALITH HOLDINGS LIMITED**, a Republic of Cyprus Corporation,<br><br>　　　　Plaintiff(s),<br><br>v.<br><br>**JOSTEIN EIKELAND**, and individual,<br><br>　　　　Defendant(s). | )<br>)<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)<br>)<br>) |

## PETITION FOR CONFIRMATION, RECOGNITION, AND ENFORCEMENT OF FOREIGN ARBITRAL AWARD

1. Pursuant to Title 9, Chapter 2 of the Federal Arbitration Act (the "FAA") and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), Petitioner Abalith Holdings Limited ("Abalith" or "Petitioner") petitions this Court for entry of a judgment:

　　a. Confirming, recognizing, and enforcing the Final Arbitral Award, dated April 8, 2019 ("Award"), rendered in the arbitration between Petitioner Abalith Holdings Limited and Respondent Jostein Eikeland ("Eikeland" or "Respondent", together with Petitioner the "Parties" and each a "Party"). A copy of the Award is attached hereto in the Declaration of Daniel Tunik, dated April 19, 2021, which is attached hereto in **Composite Exhibit "A"** and is incorporated by reference herein.[1]

---

[1] The attached Exhibit "A" contains:
　(1) the "Declaration of Daniel Tunik in Support of Petition for Confirmation, Recognition, and Enforcement of Foreign Arbitral Award", dated April 19, 2021, bates nos. 1-3,
　(2) Ex. A: "Final [Arbitral] Award", dated April 8, 2019, bates nos. 5-31, and
　(3) Ex. B: "Reorganisation (sic) Agreement", dated December 5, 2016, bates nos. 33-54.

Page **1** of **9**

    b. Entering judgment in Abalith's favor against Eikeland in the amount of the Award, plus interest; and

    c. Granting Abalith such other relief as the Court deems just and proper given the circumstances.

## I. INTRODUCTION

2. Abalith has prevailed in an international arbitration against Eikeland that was seated in Geneva Switzerland, captioned *In the matter between ABALITH HOLDINGS LIMITED, Makaiou III, Av. Neocleous House 195, 3030 Limasson, Cyprus (Claimant) and Mr Jostein Eikeland, 787 Marble Way, 33532 Boca Raton, Florida, United States of America (Respondent)* (the "Arbitration").

3. The sole arbitrator issued the Award in Abalith's favor that is final and enforceable under the New York Convention. The United States is a party to the New York Convention and implemented it pursuant to chapter 2 of Title 9 of the U.S. Code. *See* 9 U.S.C. §§ 201 *et seq*.

4. In accordance with the express mandate of Congress and the obligations assumed by the United States under the New York Convention, this Court must enforce the Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

5. The grounds specified in the New York Convention are extremely limited

6. There are no grounds that bar enforcement here.

7. Accordingly, Abalith is entitled to entry of a judgment as requested.

## THE PARTIES

8. Petitioner Abalith Holdings Limited is a company incorporated in Cyprus, with its register office at Makaiou III, Av. Neocleous House 195, 3030 Limasson, Cyprus.

9. Respondent Jostein Eikeland is a Norwegian citizen residing in Palm Beach County, Florida, United States of America.

## II. JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Eikeland pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) as Eikeland is subject to the jurisdiction of the Florida courts of general jurisdiction as a Florida resident.

11. This Court has subject matter jurisdiction under Chapter 2 of the FAA. 9 U.S.C. § 203, which provides that "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding regardless of the amount in controversy."

12. Venue is proper in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(c)(1).

## III. STATEMENT OF FACTS

**A. The Arbitration Agreement**

13. On February 19, 2016, the Parties entered into a shareholders' agreement memorializing their relationship as shareholders of the company Gingerpath Ltd, a company organized under the laws of Cyprus. This shareholders agreement was also linked with an investment and shareholding in the company Alevo Group SA, a corporation organized under the law of Switzerland and registered in Martigny, Switzerland.

14. On December 5, 2016, the Parties, as well as Gingerpath Ltd, signed a Reorganisation Agreement (sic), a true and correct copy of which is attached to the Declaration of Daniel Tunik,

dated April 19, 2021, as Exhibit B (the "Agreement") governed by the laws of Switzerland, which, in part, terminated the February 19, 2016, shareholders' agreement. See (Exhibit "A", pp. 33-54).

15. Article 17 of the Agreement contained a dispute resolution clause calling for arbitration of any disputes related to the Agreement:

> Any dispute, controversy or claim arising out of or in relation to this Agreement, including the validity, invalidity, breach or termination thereof shall be settled by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce in force on the date when the Notice of Arbitration is submitted in accordance with these Rules. The number of arbitrators shall be one. The seat of the arbitration shall be Geneva. The arbitral proceedings shall be conducted in English.

16. Article 17 of the Agreement nearly mirrors the Model Arbitration Clause available on the Swiss Chambers' Arbitration Institution's website, with only minor changes to grammar.

17. The Agreement was entered into to refinance Alevo Group SA and as part of the Agreement, Abalith agreed to loan Eikeland $10,000,000.00 to be reimbursed to Abalith on or before July 1, 2018 (the "Loan").

18. In three separate transaction on December 6, 2016, December 27, 2016, and March 15, 2017, Abalith transferred Eikeland $7,500,000.00, but the remaining $2,500,000.00—of the $10,000,000.00 loan—was never transferred to Eikeland because a certain milestone was never achieved.

19. On January 8, 2018, and pursuant to Swiss law, Abalith terminated the Loan to Eikeland due to Eikeland's failure to make on a payment on the interest due for the prior quarter, requiring Eikeland to repay the full amount due, plus interest, on or before January 22, 2018.

  1) The Arbitration

20. On March 15, 2018, Abalith initiated the Arbitration by filing a Notice of Arbitration before the Swiss Chambers' Arbitration Institution in Geneva.

21. In the Notice of Arbitration, Abalith made the following requests and prayers for relief: "Abalith Holdings Limited respectfully requests the arbitral tribunal to make an award":

   a. "ordering Mr Jostein Eikeland to pay Abalith Holdings Limited the sum of USD 7.579.112.88, plus interests at 5% per annum from 18 January 2018";

   b. "ordering Mr Jostein Eikeland to pay all costs of this arbitration proceedings (sic) on a full indemnity basis, including all legal and other costs incurred by Abalith Holdings Limited, plus interests at 5% per annum from the date of the Final Award"; and

   c. "awarding such other relief as might be necessary"

22. On April 23, 2018, Eikeland responded to the Notice of Arbitration by filing an Answer with the following requests and prayers for relief: "Respondent respectfully requests that":

   a. "Claimant's claim be dismissed";

   b. "Claimant be ordered to pay all costs of these arbitral proceedings, and to compensate Respondent for all its costs incurred in these arbitral proceedings, including payments made by Respondents towards the costs of the arbitration, costs for legal representation, internal legal and management costs, and all expenses, plus interests on such amounts at a rate and starting date to be determined in the course of this arbitration, until full and final payment"

23. The Parties failed to agree on a joint designation of a sole arbitrator for the Arbitration, and the Arbitration Court determined that it would proceed by appointing a sole arbitrator to oversee the Arbitration.

24. On May 24, 2018, Eikeland accepted and agreed to Abalith's first request for relief, "ordering Mr Jostein Eikeland to pay Abalith Holdings Limited the sum of USD 7.579.112.88, plus interests at 5% per annum from 18 January 2018."

25. On June 11, 2018, the Arbitration Court decided to appoint Luc Pittet as the sole arbitrator in the Arbitration.

   2) The Award

26. Following numerous letters concerning the Arbitration, on April 8, 2019, the sole arbitrator provided the Award, which contained the background of the underlying dispute, the issues raised, calculations as to an award, and the Award.

27. The sole arbitrator issued the following Award to be paid by Eikeland to Abalith:

   a. $7,579,109.50 with interest at a rate of 5% per year as of January 23, 2018;

   b. CHF 49,803.00;

   c. CHF 14,773.34; and

   d. CHF 39,090.00.

28. The Award therefore provides for a total award to be paid by Eikeland to Abalith of $7,579,109.50 plus CHF 103,666.34.

## IV. ARGUMENT WITH INCORPORATED MEMORANDUM OF LAW

**A. The Award is Final, Binding, and Subject to Enforcement.**

29. The Award is final, binding, and subject to enforcement. Pursuant to the International Arbitration Rules of the Swiss Chambers' Arbitration Institution, Article 32(2), each "award shall be made in writing and shall be final and binding on the parties."

   1) The Court Must Confirm, Recognize, and Enforce the Award Because it Falls under the New York Convention and None of the Grounds Specified Under the Convention for Refusal or Deferral Exists.

30. As noted, the Award is the result of an arbitration between Abalith and Eikeland, covered by the New York Convention, which Switzerland is a signatory to.

31. The United States codified the Convention in Chapter 2 of Title 9 of the U.S. Code. *See* 9 U.S.C. § 201, *et seq*. Section 207 of that Chapter provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. *The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.*

9 U.S.C. § 207 (emphasis added); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974) ("The goal of the [New York] convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.")

32. In keeping with the strong federal policy favoring arbitration, confirmation proceedings under the New York Convention are generally summary in nature. see *Booth v. Hume Pub.*, Inc., 902 F.2d 925, 932 (11th Cir. 1990) ("a confirmation of an arbitration award is intended to be summary in nature"); *Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama*, No. CV 17-23996-CIV, 2018 WL 3059649, at *6 (S.D. Fla. June 20, 2018).

33. The New York Convention provides that covered awards must be enforced, absent very specific and limited grounds. Section 207 provides that confirmation is mandatory "unless [the Court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award

specified in the said Convention." 9 U.S.C. § 207. Accordingly, US courts have little discretion to refuse to confirm an award under the FAA.

34. The burden of proof is on the party defending against enforcement of the arbitral award under the New York Convention. *IMAX Corp. v. Giencourt Invs., S.A.*, No. 17-62033-CIV, 2019 WL 8160700, at *6 (S.D. Fla. Sept. 27, 2019), *report and recommendation adopted*, No. 17-62033-CIV, 2020 WL 1067152 (S.D. Fla. Jan. 10, 2020), *aff'd*, 806 F. App'x 969 (11th Cir. 2020) (quoting *Compagnie des Bauxites de Guinee v. Hammermills, Inc.* No. 90-0169, 1992 WL 122712, *3 (D.D.C. May 29, 1992)) (internal quotation marks omitted) ("The purpose of the New York Convention is to remove pre-existing obstacles to enforcement of foreign arbitral awards which has led courts to develop a general pro-enforcement bias under which the burden of proof rests on the party challenging the arbitration award.").

35. Pursuant to 9 U.S.C. § 207, Abalith is therefore entitled to immediate confirmation, recognition, and enforcement of the Award under the New York Convention and respectfully requests that the Court enter judgment against Eikeland in the amount of the Award with interest as required by the Award.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests the Court to:

a. Enter judgment in favor of Petitioner against Respondent confirming, recognizing, and enforcing the Award;

b. Grant Petitioner judgment against Respondent in the amount of the Award together with pre-judgment interest as required by the Award as well as post-judgment interest; and

c. Grant Petitioner such other relief as this Court deems just and proper.

Dated: April 29, 2021

                    LEVY & PARTNERS, PLLC
*Local Counsel for Petitioner*
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
(954) 727-8570 – Telephone
(954) 241-6857 – Facsimile
Primary: omar@lawlp.com
Secondary: claudia@lawlp.com;
           frances@lawlp.com
**By: /s/ Omar M. Salazar II**
    OMAR M. SALAZAR II, ESQ.
    Fla. Bar No.: 0106175


Brian L. Grossman (NY Reg. No.: 5512439)*
Stefan Savic (NY Reg. No.: 5403464)*
SAVICFOLEY P.C.
315 Madison Avenue, Suite 3047
New York, New York 10017
Telephone:    (646) 357-3239
Facsimile:    (646) 776-5743
bgrossman@savicfoley.com
ssavic@savicfoley.com

*Pro hac vice application forthcoming